# In Re; State of Md v Soper

# Emergency Petition in The U.S. Federal District Court for Md.

Re: State of Md for Cecil County v Kevin A Soper(Pro Se)
Md Circuit Court Case Number C-07-CR-23-000258/414

*JRR23CV3271

## I. Jurisdiction

This Court has Jurisdiction pursuant to 28 USC 1331, Federal Question Jurisdiction.

## II. Venue

This Court has Venue pursuant to 28 USC 1391 as all parties are Maryland Residents and all actions took place in Cecil County, Maryland.

## III. Issue at Bar

1. Petitioner, Kevin A Soper, asks the Court to review motions of Federal Questions first submitted to the Md Circuit Court as to issues of the State's Jurisdiction to bring Md State criminal charges in a Md court for alleged criminal actions that took place on Federal Property, namely the Veteran's Administration Hospital at Perry Point, Md, on arrest of a Federal VA Police Officer, pursuant to 18 USC 13(The Assimilated Crimes Act).

## IV. History

1. Petitioner was arrested by The Veteran's Administration Police on, 22 February 2023 and charged for an incident that happened weeks prior at the Perry Point VA Hospital and VA Police transported Petitioner to the Cecil County, Md Sheriff's Office where he was booked on that alleged disorderly charge under Md CR 10-201(c)(2) and 3 counts of Wiretap under Md CR1 10-402

2. According to the Va Police's filed reports(Exhibits "A" and "B"), they contacted the Federal Assistant State Attorney and their call was not returned.

3. Then, on 16 March 2023, Petitioner was made aware of Maryland Criminal

1

indictment by his counsel of (5) additional felony charges of wiretap under Md CR 10-402. The indictment was issued pursuant to information from the VA Police's seizure of Petitioner's handheld phone device during the initial Disorderly conduct arrest where they, without a warrant, seized the device that was in Petitioner's wife's custody on scene and with a warrant later downloaded the contents of the device memory then leading to the indictment.

4. Petitioner's counsel has, during the course of events leading up to the pending jury trial, submitted motions to dismiss all charges citing the State's lack of Concurrent and also Original Jurisdiction over the State charges brought at the Perry Point VA Hospital.

5. The first Motion to Dismiss(Exhibit "C") was submitted on 14 September 2023 with supporting documents, acquired via subpoena to various State agencies, showing no conclusive evidence that the State has or had Concurrent Jurisdiction on the Federal VA property at Perry Point VA Hospital.(See Attached 9/14 Motion) The State as well provided no conclusive evidence as to Concurrent jurisdiction.

6. The only evidence of concurrent jurisdiction offered by The State or found by the defense via subpoena was a 40 acre tract conveyed to the State for purposes of a State Park facility and signed by the Md Governor at the time of the conveyance. The VA Hospital at Perry Point is in total a 518 acre Federal Enclave transferred to the Federal Government in 1918 and then transferred for use to the Veteran's Administration in 1923.

7. The contents of the first Motion to Dismiss contained allegations of the States lack of Concurrent Jurisdiction at Perry Point as well as questions about the application of 18 USC 13(The Assimilated Crimes Act) as the VA Police's and the State's *on record* basis for prosecution, alleged violations of 42 USC 2000aa(The Privacy Protection Act) regarding the confiscation of the Petitioner's phone as a member of the Press and a probable cause issue for the initial alleged disorderly conduct arrest being taken to a Md State Prosecutor rather then simply issuing the standard Federal Citation cited in their governing statutes and policies.

8. A Motions Hearing was held on 16 November 2023. However, the only issue regarding the Motion to Dismiss of the 4 questions brought in the motion that were discussed was regarding the Federal Enclave/Concurrent Jurisdiction issue. The other questions presented in the motion were not debated and the Circuit Court Judge dismissed the motion based solely on the issue of Concurrent Jurisdiction stating on the record that the State could proceed.

9. Petitioner subsequently had a meeting with his Counsel on the issue and wanted counsel to submit another Motion to Dismiss but to present it as a singled out Motion to Dismiss based solely on the issue of whether The Assimilated Crimes Act allows for a State to bring State Criminal Charges against a defendant where the alleged criminal actions took place on federal property and citing The Assimilated Crimes Act, regardless of whether Exclusive or Concurrent Jurisdiction applies to the property.

10. The petitioner wanted to ask only 3 questions of The State Circuit Court in the Motion: (a) Can the defendant be prosecuted under Md 10-201(c)(2), Disorderly Conduct, where a Federal Statute covering the same conduct on Federal Property applies under The Assimilated Crimes Act. (b) Can the defendant be prosecuted under Md 10-402, Felony Wiretap, where a Federal Statute covering the same conduct on Federal property applies under The Assimilated Crimes Act. And, (c) Does the Md Circuit Court have "Original Jurisdiction" to hear the alleged crimes using The Assimilated Crimes Act.

11. Petitioner's Counsel agreed to submit the motion but rather then submit it as the Petitioner asked counsel, instead, submitted a Motion for Reconsideration(Exhibit "D"). In the Reconsideration Motion, Petitioner's counsel only added a few paragraphs to the original Motion to Dismiss that the Petitioner had earlier submitted to his counsel.

12. This gave the appearance of a simple re-submission of the original Motion to Dismiss and the re-submission still never parsed out the 3 individual questions the Petitioner wanted on the record. This Motion was as well denied on unknown grounds on 21 November 2023.

13. The Petitioner met again with counsel on 21 November 2023 at his office only because Petitioner wanted to read the Motion before it was submitted not knowing that counsel already submitted the Motion to Dismiss the previous day or that it had already been denied on the same day.

14. Then, later on 21 November 2023 with only 13 days before the Pre-Trial conference and Jury Trial starting the following day, the Petitioner's father called to advise him that his counsel advised him that he was withdrawing from the case.

15. On 27 November 2023, Petitioner's Counsel filed a Motion to Withdraw to the Circuit Court.

16. The next day Petitioner, left with only 7 days before a Felony trial, submitted to the Circuit Court a Motion to proceed Pro Se, Motion to Discharge counsel,

Motion to Continue the Trial(Exhibit "E") to find new counsel and a new Motion to Dismiss(Exhibit "F")founded on the (3) questions related to The Assimilated Crimes Act as stated above. (Para 10, supra).

17. As of this date, none of the Petitioner's motions have been ruled on. However Petitioner did, on 01 December 2023, receive in the US Mail 2 letters from the Circuit Court stating that the motion to proceed Pro Se would be heard at the Pre-Trial Hearing on Monday 04 December 2023 and that the Trial for the two days following the Pre-Trial Hearing were still scheduled.

18. Petitioner comes to the Federal District Court so that this Court can clarify the statutory meanings and limits of certain Federal Statutes related to the actions pending in the Maryland Circuit Court for Cecil County against the Petitioner.

## V. Federal Enclaves and The Assimilated Crimes Act

**(A)Federal Enclaves;**
1. Upon Petitioner's arrest, The arresting VA Police Officer asserted to the Petitioner that, "Oh yes we can charge you under a Md statute because of The Assimilated Crimes Act"! This was captured on Petitioner's video cam via his phone device and entered into evidence in the State action.

2. The Maryland Assistant State's Attorney has made similar assertions, once on the record, asserting that the State can charge a person arrested by a Federal Officer on Federal property using Md statutes and in a Md Court via The Assimilated Crimes Act regardless of similarly situated Federal Statutes.

3. The jurisdictional nature of the Federal Enclave at The VA Hospital at Perry Point has never been conclusively determined to be concurrent with the State of Md. Nor any conclusive evidence found within the Statutory requirement under 40 U.S.C. § 3112 (2012) which states:

§3112. Federal jurisdiction

(a) Exclusive Jurisdiction Not Required.—*It is not required that the Federal Government obtain exclusive jurisdiction in the United States over land or an interest in land it acquires.*
(b) Acquisition and Acceptance of Jurisdiction.—*When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that*

4

*is under the immediate jurisdiction, custody, or control of the individual is situated, consent to, or cession of, any jurisdiction over the land or interest not previously obtained. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.*
(c) Presumption.—*It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section.*

4. Petitioner's counsel sent out 9 subpoenas to various Md State and Federal Government agencies. This includes The Dept of VA Regional Affairs Dept, General Counsel of Dept of Va, Perry Point VA, Md Governor and Md State House, Md State Clearinghouse, et al.

5. The State also had an opportunity to respond to the Motion to Dismiss and did so but produced no conclusive evidence of cession of jurisdiction creating concurrent jurisdiction pursuant to Sec 3112.

6. The only conclusive mutual jurisdictional agreement, pursuant to Sec 3112, that either party found was the 40 Acre cessation instrument formed by the Director at the Perry Point VA and signed by then Md Governor Mandell, ceding jurisdiction to the State for a State Park, meeting the requirements of Sec 3112. Furthermore, no case law can be found specifically addressing jurisdiction over The Va Hospital at Perry Point.

7. Given these factors and pursuant to 30 USC 3112(c), the VA Hospital at Perry Point is presumed to be a Federal Enclave with Exclusive Jurisdiction.

### (B)The Assimilated Crimes Act;

1. The Assimilated Crimes Act, 18 U.S.C. § 13, makes state law applicable to conduct occurring on lands reserved or acquired by the Federal government as provided in 18 U.S.C. § 7(3) and U.S. Const Art 1, Sec 8, Clause 17, *when the act or omission is not made punishable by an enactment of Congress.*

2. Both of the alleged acts committed by the Petitioner are well addressed by Congress in 2 Federal Statutes regarding conduct on federal properties.

3.The 1st Md Statute that the Petitioner is charged with, 10-201(c)(2) Disorderly Conduct, states that "A person may not willfully act in a disorderly manner that disturbs the public peace.".

4. The Federal Statute, 38 US CFR Ch. 1, Title 1.218 "Security and law enforcement at VA facilities" states a) Authority and rules of conduct: Pursuant to 38 U.S.C. 901, the

5

following rules and regulations apply at all property under the charge and control of VA (and not under the charge and control of the General Services Administration) and to all persons entering in or on such property. The head of the facility is charged with the responsibility for the enforcement of these rules and regulations and shall cause these rules and regulations to be posted in a conspicuous place on the property.
and;

(b)(11) Disorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility, Fine of $250.00

5. Both the State Statute and the Federal Statute are mechanically similar and well cover the alleged behavior by the Petitioner. The Federal Statute may even be interpreted more broadly then the State Statute.

6. The 2nd Md Statute the Petitioner is charged with are (8) total counts of Wiretap under Md CJ 10-402 states that. "(a) Except as otherwise specifically provided in this subtitle it is unlawful for any person to: (1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;"

7. The Federal Statute, (18 USC Sect 2511(1)(d)) states: "It shall *not be unlawful* under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication.

8. There is also a VA Directive 1078(Exhibit "G") issued 29 November 2021 and not superceeded which states; "1. PURPOSE This Veterans Health Administration (VHA) directive maintains VHA policy by which members of the VHA workforce may produce and use photographs, digital images and video or audio recordings of all persons, and reinforces existing regulations covering these activities. AUTHORITY: 38 U.S.C. § 7301(b); 38 C.F.R. § 1.218; 41 C.F.R. § 102- 74.420. *NOTE: This policy specifically does not address Veterans, patients or their family members from recording providers or employees without their permission as no federal statute or regulation prohibits such action.*"

9. Both the Federal Statute (18 USC 2511(1)(d)) and the Va Directive 1078 allow for the recording activity alleged by the State. Both the Federal Statute and the VA Directive is issued under Statutory authority by an Act of Congress as required by The Assimilated Crimes Act.

10. The Assimilated Crimes act can only be used where "the act or ommision are not

made punishable by an Act of Congress".

11. Policy limitations to statutory incorporation using the Assimilated Crimes Act have long been made by judicial decision. Two cases involving a Virginia segregation law have held that the Assimilative Crimes Act should not be construed to adopt a state law inconsistent with a policy of Congress as expressed in a civil statute, (Air Terminal Servs., Inc. v. Rentzel, 81 F. Supp.) or in a regulation issued pursuant to statutory authority.(Nash v. Air Terminal Servs., Inc., 85 F. Supp. 545 holding that "when regulations to forbid segregation on the federal enclave were issued by the Administrator, assimilation of the state segregation laws was precluded. The Rentzel opinion, however, had relied upon the regulation as only a part of a general federal policy, *and it would seem that this general policy could have been found sufficient to bar assimilation in Nash v. Air)*

10. So even a Federal policy such as VA Directive 1078, allowing the alleged videoing behavior charged as a crime by the State, should preclude the Use of The Assimilated Crimes Act in the case supra.

11. The Federal District Courts have, by Federal Statute, "*Original Jurisdiction*:", "of all offenses against the laws of The United States".

12. 18 U.S.C. § 3231 states that; "The District Courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." The Assimilated Crimes Act is a matter of Federal Statute as the Assimilated Crimes Act does not enforce laws of a State but rather assimilates those laws into a Federal Statute for purposes of a criminal prosecution in a Federal District Court.

13. In The United States v Johnson ,699 F. Supp. 226 (N.D. Cal. 1988) ,The Court asserts that a state statue invoked under The Assimilated Crimes Act *becomes* a Federal Statute because The Federal Government is party to the action AND the action took place on Federal property.

14. In US v Johnson, the Court stated, "*Prosecution under the Act, however, is not federal enforcement of state law. Rather, the assimilated state statute becomes federal law.* Johnson v. Yellow Cab Transit *228 Co., 321 U.S. 383, 389, 64 S. Ct. 622, 625, 88 L. Ed. 814 (1944); (quoting; Kiliz, 694 F.2d at 629) and also states; "as the Government points out, the policies behind the civil choice of law rules are very different from those involved in the criminal context. In diversity cases, the federal court exercises its

7

jurisdiction because of the citizenship of the parties, not the location of the action at issue. The federal court sitting in diversity is of necessity enforcing state law, and the only question is which state's law should control. *Under the Assimilative Crimes Act, by contrast, the federal government is a party to the action, and jurisdiction is founded on the commission of an offense on federal property. Johnson v. Yellow Cab, supra.* Finally, the judicial interest in preventing forum-shopping which also underlies the civil choice of law rules, Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945), *is absent in criminal prosecution under the Act*.

15. In Footnote 3 in United States v Johnson it is further stated that, "[3] At the hearing, defendant's counsel disputed the federal government's exclusive jurisdiction, noting that there may be concurrent state and federal jurisdiction over some offenses on federal property. See Kleppe v. New Mexico, 426 U.S. 529, 541-43, 96 S. Ct. 2285, 2292-94, 49 L. Ed. 2d 34 (1976) (discussing concurrent jurisdiction under U.S. Const. art. I, § 8, cl. 17). Defendant has not alleged and has made no showing that this case involves concurrent jurisdiction, however. *Moreover, even if concurrent state and federal jurisdiction existed here, defendant's argument is misconceived. Even under concurrent jurisdiction, neither the prosecution nor the defense could choose its preferred forum.* **Concurrent jurisdiction does not allow federal prosecution in state court or state prosecution in federal court.** (relative to prosecution under The Assimilated Crimes Act regarding Federal property as Johnson's crime of felony fraud via indictment took place at a U.S. Army Depot and court "forum shopping" by the prosecutors)

16. Further, The VA Police function under 38 USC Sect 902(a)(1), which states that; "Employees of the Department *who are Department police officers shall*, with respect to acts occurring on Department property- (A) *enforce Federal laws*;" Indicating that the VA Police are only Authorized to enforce Federal Statutes and Federal Poilicies authorized by Federal Statutes. The VA Police Manual only authorizes the VA Police to arrest when;

VA HANDBOOK 0730 Washington, DC 20420 Transmittal Sheet August 11, 2000

SECURITY AND LAW ENFORCEMENT

**b. Statutory Arrest Authority**

(1) Employees who are duly appointed as VA police officers will have the authority to enforce Federal laws and VA regulations with respect to acts occurring on Department property, to arrest persons on Department property for offenses committed on that

property, and to make arrests on warrants issued by a proper Federal authority for those offenses.

(2) In the absence of an arrest warrant, VA police officers may arrest only when:

(a) A felony is committed in the officer's presence or there is probable cause to believe that a felony has been committed and the person the officer intends to arrest committed the offense.

(b) The offense is a misdemeanor or infraction and is committed in the officer's presence. If the misdemeanor is not committed in the officer's presence, the known facts of the incident will be communicated to the U.S. Attorney for guidance and instructions for the appropriate action to be taken.

(3) VA police may enforce the traffic and motor vehicle laws of the state or local government within the jurisdiction of which the VA property is located as authorized by an express grant of authority under the applicable state or local law. This enforcement is limited to the issuance of a citation.

**Investigations:**

(3) Allegations of crimes against persons, non-government property or other non-fraudulent criminal matters will be referred to the appropriate U.S. Attorney, FBI, or local law

**c. Classification of Crimes**

(2) The Assimilated Crimes Act, Title 18 U.S.C. § 13, will be used at facilities having exclusive or concurrent jurisdiction in those instances where a crime has been committed and no specific Federal law exists defining the offense. The local U.S. Attorney will be consulted when considering use of the Assimilated Crimes Act.

**d. Processing U.S. Court Violation Notices**

(1) The U.S. Court Violation Notice has been adopted by the Department of Veterans Affairs for use at all facilities irrespective of the degree of Federal jurisdiction held over the property for the enforcement of Title 38 CFR § 1.218.

(2) The penalty for an offense listed in Title 38 CFR § 1.218(b) shall be the fine set by that provision for such violation, or payment in lieu of appearance as may be provided for in the rules of the United States District Court.

17. In a sister District Court case, US District Court for the Eastern District of Virginia - in U.S. V Statler 121 F. Supp. 2d 925 (E.D. Va. 2000)November 28, 2000, The Court held that;

"The ACA provides for the application of state penal statutes to any act or omission committed or omitted in a federal enclave, where the act or omission, "although not punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State." 18 U.S.C. § 13(a). In so doing, "[t]he [ACA] promotes the even-handed application of state law to local conduct that the federal law does not punish and, but for the situs being a federal enclave, would qualify as a local offense." *United States v. Waites,* 198 F.3d 1123, 1127 (9th Cir. 2000). In essence, the ACA "adopt[s] for otherwise undefined offenses the policy of general conformity to local law,"[3] and assimilation serves "to fill gaps in the federal criminal law that applies on federal enclaves."

## VI. Conclusions

1. Neither the State nor The Circuit Court for The State of Md have jurisdictional authority over the propery located at The Va Hospital at Perry Point. This is demonstrated by the fact that both the State and the Petitioner have made good faith efforts to locate the documents required by Federal Statute to show some concurrent jurisdictional agreement between the Federal Government via the VA Administration and The State of Maryland. Although there was found a document signed by the Md Governor, that document only ceded a specified 40 acre section, unrelated to the balance of the VA Hospital property's 518 total acres.

2. The Assimilated Crimes Act, by Federal Statute and indeed case law is not intended by Congress for purposes of The State to prosecute crimes occuring on Federal properties or on arrest by Federal VA Police Officers who may desire to do "forum shopping".

3. The Assimilated Crimes Act precludes actions deemed criminal by a State statute where a Federal Statute or Federal Policy authorized by Federal Statute desribes the same behavior. In such case the Federal Statute is superior and The Federal District Court has Original Jurisdiction.

4. The Petitioner is being denied his 14th Amendment Due Process and Equal Protection

garuntees by and through The State of Maryland's Assistant Attorney and the Md. Circuit Court.

5. Petitioner is at great and immediate risk of losing his liberty and property after a good faith effort to introduce these Federal Questions to the State Circuit Court and beleives the Circuit Court erred in it's decision to deny defendant's Motion to Dismiss regarding all of the jurisdictional issues raised.

## VII. Questions to The Federal District Court.

1. Does the State or Circuit Court for Cecil County have jurisdiction to effect a criminal prosecution in the absence of the conclusive proof required by Federal Statute of concurrent jurisdiction at the VA Hospital located at Perry Point, Maryland?

2. Can the State assert jurisdiction under the circumstances here via The Assimilated Crimes Act?

3. Does The State have Original Jurisdiction via The Assimilated Crimes Act or by other statute or case law to prosecute or, is the State Circuit Court the correct statutory Venue to hear the case supra?

4. Should The State of Md dismiss all charges of Disorderly Conduct and Md Wiretap violations alleged here for any of the jurisdictioal issues raised?

## VIII. Releif

1. Petitioner prays the Federal District Court to direct the Md Circuit Court to immediately stay all further proceedings until such time as The Federal District Court can make a ruling on the questions presented herein.

2. Petitoner prays The Federal District Court to direct the State Circuit Court to proceed only after this Court has ruled on this Petition.

3. Petitioner prays the Court to reclaim it's Original Jurisdiction in this action and to direct The State Circuit Court to Dismiss without further delay the charges pending in

that Court, without predjudice, so that The Local Federal Prosecutor may entertain the federal charges that may apply to the Petitioner's actions on the day of his original arrest.

4. Petitioner prays The Federal District Court to schedule a Hearing, as the Court may require, for purposes of further fact finding should it require more information to act upon this Petition.

5. Petitioner prays The Federal District Court any further releif The Court should find neccesary to expedite or grant this Petition.

For the reasons as stated supra, the State's Attorney for Cecil County, Maryland, has no cause for an action herein under The Assimilated Crimes Act. Nor, respectfully, does The Maryland Circuit Court have original jurisdiction over the instant matter. Only the proper United States Attorney and United State District Court would have proper authority. Therefore, undersigned Pro Se Defendant respectfully asks the Court to GRANT Mr. Soper's Petition.

Defendant Pro Se Kevin A. Soper swears and affirms that the contents of this Petition are true and correct to the best of his belief. Respectfully Submitted,

_____   12-4-23
**Kevin A Soper(Pro Se)**         **Date**