USDC- BALTIMORE
'24 JUL 26 PM 12:55

Rcv'd by: AV

In Re; State of Md v Soper
Federal District Court for Md. Case **23-cv-3271-JRR**

# Re; Emergency Petition in The U.S. Federal District Court for Md.

Re: State of Md for Cecil County v Kevin A Soper(Pro Se)
Md Circuit Court Case Number C-07-CR-23-000258/414

## FRCP Rule 59 Motion

Plaintiff in the above named matter, Kevin A Soper (Pro Se), Motions this Court to alter or amend it's Order to Dismiss entered 07/02/2024 for the reasons that follow.

### I. The Younger Doctrine

This Court's Memorandum accompanying the Court's Order to Dismiss without prejudice well explained this Court's position regarding the Younger Abstention Doctrine. However, Plaintiff believes that there are exceptions to Younger that likely apply to the case supra both within Plaintiff's Petition{ECF 1}, Plaintiff's Answer to The States Motion to Dismiss{ECF 13} as well as within recently discovered evidence of bad faith on the part of both the State Prosecutor's Office for Cecil County as well as The Circuit Court for Cecil County, which will be brought forth in this Motion. Plaintiff does not take such assertions lightly, nor should this Court.

### II. The Younger Bad Faith Exception

As the Court explained in it's Memorandum Opinion, Federal Court Abstention exceptions are few. This Court does however acknowledge an exception to Younger being a prosecution brought in "bad faith". Plaintiff, in his complaint {ECF 1}, has pointed out "bad faith" on the part of the Veteran's Administration Police Officers who initiated this action in that they were "forum shopping" for a court where they could more easily get a prosecution, especially for legally, by Federal Statute and VA Policy, videoing at a VA facility{See: ECF #1 VI Para 2}. This was again pointed out in the Plaintiff's Answer to States Motion {ECF 13 Para 2},The VA Police Officers involved circumvented both their own policies as well as Federal Statutes, including a mandate

<966767>
concerning contacting a Federal Prosecutor, governing arrests on VA Properties to effect a prosecution. This gives more then just an appearance of bad faith.

Furthermore, the Prosecutor for The State, acknowledging the Assimilative Crimes Act(ACA) as their mechanism for using a State Court for such a prosecution on the record has, through answers to Motions during the course of this action, never defended using the ACA. In fact, that issue was never argued in the State proceedings nor in this Federal Action. It's been skillfully avoided. Nor has the State Circuit Court Judge Baynes made any ruling directed through Plaintiff's motions to address that issue. All of Plaintiff's Motions to dismiss in the State Court were denied on grounds of the Concurrent Jurisdiction issue (even before proper evidence was submitted) and neither the Judge nor The State has ever acknowledged on the record an argument favoring the ACA's use in the prosecution in that Court.

Plaintiff finally conceded that Maryland has Concurrent Jurisdiction over the Federal Property at Perry Point VA during *this* action when he was finally shown proof satisfying the Federal Statute regarding Concurrent Jurisdiction found in the States answer in ECF 8 "Motion to Dismiss". However, concurrent jurisdiction in no way satisfies Plaintiff's other argument that only the Federal District Courts have Original Jurisdiction and are the proper forum to prosecute crimes occurring on such Federal Properties. Plaintiff has been unable to raise this due to prejudice in the State Court.

This Court points out an excerpt from Younger, stating in part that, "Thus, a federal court must abstain from interfering with an ongoing state proceeding where a litigant has "an 'opportunity to raise and have timely decided by a competent state tribunal the federal issues involved' and . . . no bad faith, harassment, or other exceptional circumstances dictate to the contrary." *Middlesex*, 457 U.S. at 437, 102 S.Ct. 2515 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)). Plaintiff has been time and again denied "an opportunity to raise and have timely decided by a competent state tribunal the federal issues involved" regarding the ACA.

This concept is again displayed in U.S. 4th Circuit Case No. 21-1301 "...the circumstances must be, as the phrase suggests, extraordinary. While we have not provided a definitive or exhaustive set of criteria as to what constitutes an extraordinary circumstance, our prior decisions suggest there must be actual impediments to the state's ability to address the federal issues. Cf. Simopoulos v. Virginia State Bd. of Med., 644 F.2d 321, 327–29 (4th Cir. 1981) (explaining that the bad faith and patent unconstitutionality exceptions to Younger abstention apply *"if the state procedure fails to provide the federal plaintiff with an adequate opportunity to litigate in the state forum"*); Mulholland v. Marion Cnty. Election Bd., 746 F.3d 811, 819 (7th Cir. 2014)". Again, the State Prosecutors in

the State action, The State Court Judge and even The Assistant State's Attorney for Md in this federal action have time and again avoided debate on the issue.

## III. Judicial Notice

1. Throughout this federal action, Plaintiff has attempted to keep this Court updated as to the happenings in the State prosecution via Judicial Notices. Plaintiff was composing another Judicial Notice in the days leading up to this Court's Dismissal Order to include exhibits mentioned later in this Motion. Since Plaintiff's last Judicial notice there have been (6) Motions sent to the State Court. There has also been (2) Hearings held in the State Court and the State Trial has been postponed to early September, 2024.

2. Among those Motions are; Motion for Grand Jury Disclosure [Exhibit "A"], Motion for Discovery[Exhibit "B"], Motion to Reconsider Grand Jury Motion[Exhibit "C"], Motion to Reconsider Discovery Motion[Exhibit "D"], Motion to Strike[Exhibit "E"] and a Motion to Recuse[Exhibit "F"] directed to the Circuit Court Administrative Judge. All of these Motions were Denied by Circuit Court Judge Baynes, including the Recusal Motion directed to the Administrative Judge for the Circuit Court.

3. Of those Motions, (3) were based upon State Court Rules and were a matter of Law with no leave for the Court to deny them. For example, the Motion to Strike[Exhibit "E"] asked the State court to strike the State's use of the video he was being charged with obtaining at the VA property as the Md Code (Md Code Jud Pro 10-405) forbids it's use in a court proceeding stating, "a) Except as provided in subsection (b) of this section, whenever any wire, oral, or electronic communication has been intercepted, *no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of this subtitle.*" There is no exception with leave for a Judge to allow that evidence for trial in the Md Code, as it expressly forbids it. The other (2) Motions for Discovery and it's Reconsideration Motion read similar to the 10-405 rule with no leave for denial.

## IV. Bad Faith- The VA Police

1. The Veteran's Affairs Police initiated the State action prior to contacting the U.S. Attorney by contacting the Maryland State's Attorney's Office and offering for them to take up the Maryland charges Plaintiff is faced with today. VA Police Sargent Dale Money, on January 31st 2023 responded to a disorderly patient at Building 361 at the Perry Point, Md VA Facility. He spoke to the Plaintiff's doctor there, then spoke to the Plaintiff. Sargent Money, after speaking to them, allowed Plaintiff to leave the facility. Later that same day Sargent Money submitted a VA Police report[Exhibit "G"]. Also on that day Sargent Money rightfully attempted to contact an Assistant U.S. Attorney(AUSA), per VA Police Policy. However that AUSA had not returned his call and Sargent Money states in that same report that "charges are pending for violating Maryland's Wiretapping and Electronic Surveillance Act....". Sargent Money had to have contacted the Maryland State's Attorney's Office that same day if "charges were pending" that same day. This report was reviewed by Lt Willie Farrar on 02/03/23.

2. On that same February day as Lt Farrar's review, and only 3 days after having not received a return call from the AUSA, Sargent Money went to a Cecil County District Court Commissioner and applied for a warrant for Plaintiff's arrest. This warrant was granted.

3. Plaintiff was arrested and had his phone confiscated by VA Police, on February 22nd, 2023. Plaintiff had earlier made an appointment for follow up healthcare at the same VA Building and 3 officers were waiting outside of the entrance to arrest him. During the arrest, VA Police Officer McClean made clear that they had been watching Plaintiff's YouTube channel for "A while now".

4. On March 3rd, Sargent Money applied for a search warrant for Plaintiff's phone [Exhibit "H"] again in the District Court for Cecil County. This time a District Court Judge granted the warrant.

5. Later on April 5th 2023, Sargent Money made another VA Police Report[Exhibit "I"] stating in that report that; on March 28th 2023 he had made a statement to a witness(Gonzales) that what the Plaintiff did was a crime under Maryland Statutes and that he had been in contact with the Cecil County State Attorney's Office and that they had an interest in pursuing this case(by this time an indictment had been filed in the State Circuit Court on March 15th). And Sargent Money also stated that he had contacted the AUSA and asked if they had an interest in pursuing this case. The AUSA responded in an email that since the Plaintiff already had a "similar" case pending in State Court to file charges in Cecil County.

6. The VA Police made a grandiose effort to avoid the Assistant U.S. Attorneys statutorily required guidance regarding this case. On the day of the disturbance call at the VA, Sargent Money states that he called and then received no return call from the AUSA. Sargent Money then, 3 days later, went to Cecil County District Court and applied for an arrest warrant still having not received a response from the AUSA. No mention of any further attempt to attempt contact with the AUSA. According to his reports, after Plaintiff was arrested, they waited another 33 days then applied at the District Court for Cecil County for a warrant for the contents of Plaintiff's phone. Then, another 25 days later Sargent Money finally tries to contact the AUSA for "guidance", covering his unguided actions by telling the AUSA that the Plaintiff "already has similar charges pending in Maryland State Court". Of course, the AUSA logically advised Sargent Money to pursue charges in the State Court, not knowing the whole of the case up to that point. By this point, a 4 charge indictment had already been recorded in the State Circuit Court.

7. If Sargent Money had probable cause to effect a warrant ,with a charge including Disorderly Conduct 3 days after the incident, then he also logically had probable cause to effect an arrest on the day of the incident that spawned Sargent Money's actions demonstrated here. All told, from the date of the "disorderly" incident on January 31st 2023 until Sargent Money finally made contact with the AUSA on March 28th 2023, a total of 56 days had passed. Sargent Money and his command likely knew that the Maryland Wiretap Statutes couldn't apply to Plaintiff's actions that January day and "forum shopped" for a Court that would prosecute the Plaintiff. An AUSA would likely have known that the Wiretap charges couldn't be prosecuted in neither a Federal or a State Court. The totality of the Veteran's Administration Police's actions avoiding proper statutory guidance required gives the appearance of "bad faith" as an exception to The Younger Abstention Doctrine. These facts were stated in somewhat less detail in ECF #1 and ECF#13.

## V. Bad Faith- Md Prosecutor

1. The Maryland Assistant State's Attorney for Cecil County has skillfully avoided any argument regarding the Assimilative Crimes Act(ASA). Although he once acknowledged it's use in the State case on the record. Although numerous Motions have been filed by the Plaintiff in the State Court regarding the ASA, the State Attorney has never presented an argument supporting his position on it's use. This prejudices Plaintiff's

ability to bring the Federal issues in the State action.

   2. Further, the State Attorney has denied Plaintiff discovery. In December 2023 Plaintiff's Counsel quit his case. Plaintiff's Counsel withheld the majority of discovery he had months earlier received from the State Attorney. Once Plaintiff realized that he did not have all of the discovery, he made a motion to the State Court compelling the remaining discovery.

   3. The State's Attorney's answer to that Motion was that he had already given discovery to Plaintiff's previous counsel[Exhibit "J"]. In Maryland, discovery is an "ongoing" process. The State's refusal to provide discovery prejudices Plaintiff's ability to timely form a defense. The Cecil County Circuit Court Judge denies Plaintiff's Motion. More on him below.

   4. Plaintiff filed a Motion to Reconsider Discovery[Exhibit "D"], the State Attorney made no Answer and that Motion was also denied by the same Circuit Court Judge. The State finally on the day of the Pre-Trial Hearing on June 24th 2024, gave Plaintiff some of the Discovery asked for in the prior Motion and Reconsideration Motion but continues to withhold the 25 cases discussed supra.

## VI. Bad Faith- Cecil County Judges

   1. Since Plaintiff Soper's Motion to proceed Pro Se in December of 2023, and subsequent to the quitting of his attorney, the actions of the Judge in the case, Hon Keith Baynes have given the appearance of bias due to his actions as outlined below. Had there been merely a few "bumps" in the road of due process towards Plaintiff Soper it may have gone unnoticed. However, there has been a consistent series of rulings and actions by the Judge on the record that would lead one to believe that a bias exists. This all recently culminating in a fraudulent cover up by Judge Baynes, Administrative Judge Brenda Sexton and the Circuit Court Clerk Charlene Notarcola.

   2. As explained supra, Judge Baynes has consistently ruled against Plaintiff's Motions in the State Court. Some of these Motions being a matter of law. This brings us again to the Discovery Motion filed on May 24th 2024. This Motion asked the court to have The State provide (4) elements of Discovery. Of those elements, (3) were commonly provided discovery including lists of both Victims and Witnesses the State planned on using in the trial as well as digital audio and video evidence originating from; Police body worn cams, Police dash cams, downloaded audio or video data originating from

Defendants confiscated cellular phone device or originating from social media to be used by The State's Attorney at trial.

3. The fourth element of Discovery the Plaintiff asked for was a list of at least (25) cases that The State claimed in their Motion to Dismiss[ECF #8, Memorandum in Support] in this Federal Action regarding other cases prosecuted in the State court that occurred at the Perry Point VA facility. This claim came from the Memorandum by a District Court Assistant State Attorney.

4. The State, as noted above, answered that that case information was not relevant to Plaintiff's State criminal matter. Then, Judge Baynes DENIED the Reconsideration of Discovery Motion, noting directly on the Motion[Exhibit "K"], "No Action" meaning that he would not consider the Motion (verbally relayed to Plaintiff by The State Circuit Court Clerk) and that the Plaintiff "Need to file it" in the "Federal Matter".

5. The Defendant did not take the Judge's legal advise as both parties in the Federal Court have asked for Judgment on that matter long before the State Discovery Motion was filed. A State Court Judge giving legal advice from the bench, poor advice at that, is contrary to Md Rule 18-103.10.

6. The subsequent Motion to Reconsider the Discovery Motion[Exhibit "D"] explaining that production of Discovery was a matter of law was summarily denied on the same day it was filed with no answer produced by the State.

7. Plaintiff recently discovered that as a Pro Se Defendant in the State court that he was eligible to use the Maryland Court's Electronic Case Management System which gives him access to Court filings. The information available on the Maryland case management system has more details then is otherwise normally available to the Plaintiff. Up until this discovery, plaintiff was forced to call the Clerk to see what the rulings on the Motions were. It has since been found that Judge Baynes, other then the comments on the Motion for Discovery, never made any other rulings on the record, he only stamped all of the Motions "Denied".

8. On 6/14/2024, Plaintiff filed a Motion to Recuse[Exhibit "L"] with an attached Affidavit[Exhibit "M"] which was directed to the Administrative Judge Sexton. Plaintiff saw no answer from the State and by the time his June 24th Pre-Trial Conference had arrived no ruling by The Administrative Judge. Plaintiff attended the Pre-Trial Conference ready to make an argument and receive a ruling on the Motion to Recuse. However, to the Plaintiff's surprise, the Pre-Trial Conference was still scheduled to be

heard by Judge Baynes.

   9. At the Pre-Trial Conference, the State advised Judge Baynes that a witness would be unable to attend the Trial scheduled for 2 days later and was requesting a postponement of the jury trial[Exhibit "N" Pg2 @ 20]. Judge Baynes sent the State and the Plaintiff to see Administrative Judge Sexton because only an Administrative Circuit Court Judge can postpone a trial beyond the Hick's Rule per Maryland Rule and for good cause.

   10. At the Postponement Hearing before Admin. Judge Sexton[Exhibit "N" Pg 5 @1], the parties discussed the postponement and the Plaintiff, for the record, asked Judge Sexton about the Motion which had not yet been ruled on. Judge Sexton asked the State about the Motion and he advised her that, "there was a Motion to Recuse filed 10 days ago" and that he had not yet filed a response. Judge Sexton was clearly unaware of the Motion to Recuse, and immediately researched the motion on her computer. Plaintiff then made Judge Sexton aware that the Motion was directed to her and that she was the only one that could rule on that Motion. Judge Sexton asked Plaintiff when the Motion was filed and was advised that it was "a week and a half ago"[Exhibit "N" Pg 9 @2].

   11. Judge Sexton advised the State that she was giving him 15 days to respond and that she would schedule a Motions Hearing should one be needed for her to make a ruling on the Recusal Motion after the State's response was entered[Exhibit "N" Pg 10 @ 7].

   12. Judge Sexton was clearly unaware of the Plaintiff's Motion to Recuse. Plaintiff left the Courthouse at approximately 1:45 PM and made a stop for fuel. At the stop, Plaintiff checked the public Maryland Judiciary Case Search Record[Exhibit "O"] to see if the new Trail date was posted. It was. However, Plaintiff also noticed that there had been a new entry on the Md public record backdated 10 days to 06/14/24 stating that his Recusal Motion was granted. This was the first appearance of that ruling on the record some 30 minutes after having left the Courthouse.

   13. Plaintiff continued home and then checked the record via his Md Electronic Case Access and discovered that the record there showed that the Recusal Motion was granted by Judge Baynes on June 14th 2024. Again, the Motion was directed to the Administrative Judge Sexton. However, when the Plaintiff downloaded the Order accompanying the Motion[Exhibit "P"] he discovered that the Motion was NOT granted. It was actually Denied by Judge Baynes. And, in fact, the Motion had not only been backdated but was also printed on a modified version of the original Proposed Order submitted by the Plaintiff with the Motion to Recuse 10 days earlier. It was timestamped electronically on June 24th 2024 at 2:35 PM.

14. That original Proposed Order[Exhibit "Q"]was originally hand stamped by The Clerk of Court on the day it was received, June 14th 2024, along with the Motion to Recuse and the attached Affidavit. All (3) items were also electronically recorded and date/time stamped as such at the top of the pages as it was fed into the document processor. Those original documents are time stamped beginning at 4:03PM and ending at 4:04PM. However, the Proposed Order had been clearly later modified such that it was made to appear that the Denial had been entered 10 days prior. But the record clearly shows the discrepancy in the date and time stamps, as though it had been entered on June 14th rather then the actual date of entry, which was also printed on the top of the page of the Order as June 24th. The original digital entry on the original Proposed Order appears to have been tampered with, likely with "white-out".

15. The denial of Plaintiffs Motion to Recuse, directed to the Administrative Judge Sexton, was clearly denied by Judge Baynes on the day of the Pre-Trial Conference on the afternoon of June 24th 2024 *after* the Pre-Trial and Postponement Hearings were concluded. The State never answered the Motion per the Administrative Judge's Order at the Postponement Hearing. No Motions Hearing was scheduled pursuant to the Administrative Judge's discussion at the Postponement Hearing[Exhibit "N" Pg 10 @7]. As of this writing, it is still shown as Granted on the public record.

16. The only way this could have occurred is if the Circuit Court Judges and the Circuit Court Clerk conspired to alter the Court Records. Plaintiff's federal statutory and 14th Amendment Due Process claims remain unheard in the State Court.
(Note; The "Exhibit N" improperly notes Judge Sexton presiding over both the Pre-Trial Conference and the Postponement Hearing. The record will show that Judge Baynes presided over the Pre-Trial and Judge Sexton presided over the Postponement Hearing. This is likely due to the Clerk's erroneous entries of the Court Record)

## VII. Bad Faith- Cecil County Clerk

1. The Clerk of the Cecil County Circuit Court did, knowingly and willingly, alter a court document contrary to several Maryland Rules and criminal Statutes. This is clearly demonstrated in the Exhibits mentioned above and paragraphs 13 and 14 under Section VI. supra. The effect of these alterations are that it prejudices the Plaintiff's ability to remedy the issue of Recusal and the Circuit Court's errors in denying(or granting?) the Motion to Recuse. Plaintiff would have had 10 days to appeal the Motion to Recuse to an En Banc Panel of the Circuit Court. However, Since the Motion was, and still is at the time of this writing, shown as Granted on the Maryland Judiciary Case Search website and since the entry of Judge Baynes' Denial of said Motion was backdated exactly 10

days, the Circuit Court Clerk effectively usurped Plaintiff's right to timely appeal the Denial of the Motion En Banc pursuant to Md Criminal Proc. Rule 4-352 (In Banc Review) and Maryland Rules of Civ. Proc. 2-551(a) ( In Banc Review).

2. Whether the Court Clerk did this on her own or at the direction of either or both Circuit Court Judges matters not. Maryland Statute 8-605(a)(1) states, "A person may not counterfeit, cause to be counterfeited, or willingly aid or assist in counterfeiting: (I) a Commission, Patent, Pardon, ….or other court document", and the Statute makes this act a felony. Further, Maryland Statute 8-606(b) states. "(b) A person may not or may not attempt to: (1) willfully make a false entry in a public record; (and) (2) except under proper authority, willfully alter, deface, destroy, remove, or conceal a public record;", and the Statute makes this act a misdemeanor.

3. The Clerk of Court altered no less then (4) Official State court records including; altering the court record by backdating an Order 10 days, Altering the original previously entered Proposed Order authored by the Plaintiff to make the Court Clerk Stamp showing a date of June 14th, 2024 and entering the Recusal Motion as "granted" on the public website while also entering it as "Denied" on the limited access Court Record. And, finally the Clerk entered the Administrative Judge's name on both the public and limited access websites as the Officer of both hearings of June 24th. This is also incorrect. Judge Baynes was presiding at the Pre-Trial Conference and The Administrative Judge presided over the Postponement hearing. This fact is found in the Court Minutes from that date. This combination of incorrect records gives the appearance that the Motion to Recuse was granted. This is a case where, again, an excusable error may have occurred as it sometimes does. But (4) "errors" of the same official records and documents is highly suspect and, at least, gives the impression of bad faith. The actions of the Clerk could be seen to serve to cover up an error by the Judges. Directed or not, it is illegal and prejudices the Plaintiff in the State Circuit Court.

4. The 4th Circuit in McCray v State of Maryland 456 F.2d 1 (1972) notes that "...in respect to filing papers, the clerk has no discretion that merits insulation by a grant of absolute immunity; the act is mandatory. Md. Ann.Code, Art. 17 Sec. 1 (1957). His duty, although associated with the court system, is not quasi-judicial (meaning entailing a discretion similar to that exercised by a judge). Clerical duties are generally classified as ministerial, 2 Harper & James, The Law of Torts, 1644 (1956), and the act of filing papers with the court is as ministerial and inflexibly mandatory as any of the clerk's responsibilities... Thus there is no basis for sheltering the clerk from liability under section 1983 for failure to perform a required ministerial act such as properly filing papers. This conclusion is supported by cases such as Washington v. Official Court Stenographer, 251 F. Supp. 945 (E.D. Pa. 1966)... Indeed, it is significant that under

Maryland law, the court clerk is already subject to a forfeiture of $200 for "neglectfully or willfully" failing to perform such ministerial duties as making "proper entries of all proceedings in the court of which he is clerk."

## VIII. Irreparable Injury and Younger

1. This Court contends that Plaintiff suffers no "Irreparable Injury" because plaintiff "only" claims that his injuries are relative to expenses in his State defense. Plaintiff has already suffered irreparable injury in that he is no longer able to video his appointments and interactions while receiving care at the VA Hospital at Perry Point according to Federal statutes and policy. Due to this, Plaintiff now receives most of his medical care at the Baltimore VA facility, a much further drive then his distance to the Perry Point Facility.

2. There are other Constitutional implications to Plaintiff's inability to perform his activities at Perry Point. Plaintiff is "the press". Some of the content captured at Perry Point VA is uploaded to his YouTube Channel. The reason the channel was created was to distribute information gained at his VA appointments. Nothing in the Federal Statutes or VA Policies make this unlawful. Due to the State's prosecution for those activities, 1st Amendment protected activities are effectively barred with prior restraint under threat of more Md Criminal Statutes being again applied in an overbroad manner to the Plaintiff. This is an irreparable injury supported by Dombrowski v. Pfister, 380 U.S. 479 which states; "But the allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss of or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury... and the Court made clear that even under these circumstances the District Court issuing the injunction would have continuing power to lift it at any time and remit the plaintiffs to the state courts if circumstances warranted." The Dombrowski Court Held:

1. The mere possibility of erroneous initial application of constitutional standards by a state court will not ordinarily constitute irreparable injury warranting federal interference with a *good faith* prosecution and the adjudication during its course of constitutional defenses.

2. But equitable relief will be granted to prevent a substantial loss or impairment of freedoms of expression resulting from prosecution under an excessively broad statute regulating expression.

(a) Defense of a criminal prosecution will not generally assure ample vindication of First Amendment rights. *Baggett v. Bullitt,*

(b) A chilling effect upon First Amendment rights might result from such prosecution regardless of its prospects of success or failure, as is indicated by appellants' representations of the actions taken under the statutes.

3. The abstention doctrine is inappropriate where a statute is justifiably attacked on its face, or as applied for the purpose of discouraging protected activities.

(a) The state court's ultimate interpretation of a statute would be irrelevant to meet the claim that it was being applied to discourage civil rights activities.

(b) Abstention is inappropriate where a statute regulating speech is properly attacked on its face as being unconstitutionally vague.

(c) Appellants are entitled to an injunction where, as here, no readily apparent construction is available to bring the statute within constitutional confines in a single prosecution, and it is not alleged that their conduct would fall within any conceivable narrowing construction.

   3. Any further delay of a ruling on the merits of this petition denies Constitutional rights, to not only the Plaintiff but a whole class of citizen's who served our county, *other veterans*. To re-state, videoing such as the Plaintiff is being charged with as a crime at Perry Point VA, continues to go unhindered at other VA facilities around the State including the Baltimore VA facilities where the Plaintiff has made videos in office areas beyond the public spaces and posted those videos to YouTube uninhibited and with direct knowledge of VA Police there. This factor is supported by *Elrod v. Burns, 427 U.S. 347, 373 (1976) "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."* .


   4. The case supra is distinguishable from Younger such that the Plaintiff here has alleged "bad faith" both in his Petition[ECF #1] and upon further more recently found evidence of bad faith supra. And, in Younger the Court stated, "Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not, by themselves, be considered "irreparable" in the special legal sense of that term. Instead, *the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.* Here, even if found not guilty in the State court, Plaintiff along with his class of Veteran Citizens remain in cue for prosecution under similar circumstances at the Perry Point VA.

   5. Plaintiff here does not challenge the facial Constitutionality of the State Statutes

brought against him. The Statutes are likely Constitutional, in Maryland. Instead he challenges the overbroad application of said Statutes as a matter of Federal Jurisdiction where the events leading to the State charges occurred on Federal Property on arrest by Federal Law Enforcement where this Court should have "Original Jurisdiction". The restoration of the Federal Courts jurisdiction is the issue because Plaintiffs Federal claims and Constitutional claims would more likely be satisfied in the Federal Court. Injunctive relief in this case would in no way render the Maryland Statutes brought against the Plaintiff in the State proceeding unconstitutional, invalid or otherwise unenforceable in the State.

## IX. "Extraordinary Circumstances and Other Exceptions"

1. *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975) narrows the requirements of Extraordinary Circumstances. ("The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.")

2. The circumstances in the State Criminal proceedings are "extraordinary" where immediate equitable relief is necessary of this court in order to prevent a criminal action brought in bad faith by a forum shopping federal officer and a compliant State Prosecutor and Court from failing to provide a forum to hear both federal statutory and Constitutional issues. Further, the "extraordinary circumstances" present this Court with a matter of first impression where the Plaintiff here has found no case law where any Federal Law Enforcement Officer brings an action in a State Court who is preempted by jurisdiction to a Federal Court and also where the State statue(s) applied are preempted by federal statutes and federal policy on federal properties. These are both suitable support for "extraordinary circumstances" as defined by Kugler, Air Evac and Younger.

3. Although not covered in the Court's Memorandum Opinion, the issue of federal jurisdiction precludes abstention. *This case presents no difficult question of State Law.* The doctrine of abstention requires that the federal courts abstain from interference where "comity and equity" outweigh the federal courts interference in State court business. However, abstention should not be applied where federal interference doesn't interfere with a State's ability to enforce it's laws and answer complex questions of State

laws. Pursuant to Railroad Commission v. Pullman Co., 312 U.S. 496 (1941), courts may abstain when the need to decide a federal constitutional question might be avoided if state courts are given the opportunity to construe ambiguous state law. Another doctrine, articulated in Louisiana Power & Light Co. v.City of Thibodaux, 360 U.S. 25 (1959), allows abstention in cases raising issues "intimately involved with [the State's] sovereign pre-rogative," where proper adjudication might be impaired by unsettled questions of state law. To be sure, these discrete abstention doctrines "are not rigid pigeon holes into which federal courts must try to fit cases." PennzoilCo. v. Texaco Inc., 481 U.S.

    4. But at the same time, the Supreme Court has never allowed abstention to be a license for free-form ad hoc judicial balancing of the totality of state and federal interests in a case. The Court has instead defined specific doctrines that apply in particular classes of cases. See NOPSI, 491U.S. at 359. In the case supra, The Younger Abstention Doctrine was applied. Although facts that can be applied to the Younger exceptions are stated above and should relieve the petition of it's application, another issue has not been addressed, preemption and Federal Jurisdiction. Courts must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation outweighs the federal interest in adjudicating the case at bar. NOPSI, 491 U.S. at362. "This balance only rarely favors abstention." Quackenbush, 517U.S. At 728. See, e.g., NOPSI, 491U.S. at 361-62 (holding district court abused its discretion in abstaining when no "state-law claim" is involved and adjudication of a pre-emption claim "would not disrupt the State's attempt to ensure uniformity"); Colo. River Water Conserv. Dist. v. United States, 424U.S. 800, 815 (1976) (holding district court abused its discretion in abstaining under Burford when "state law to be applied appear[ed] to be settled" and federal adjudication would not "impair efforts to implement state policy"); McNeese v. Bd. of Educ., 373 U.S. 668, 674(1963) (declining to abstain when "no underlying issue of state law control[s]" and "the right alleged is . . . plainly federal in origin and nature").

    5. This case requires no complicated State law interpretation nor does it interfere with the State's interest in enforcing it's laws. No equity or comity issues are found in this court's interpreting the federal issues of either The Assimilative Crimes Act, it's jurisdiction over actions on Federal properties alleged or the Constitutional issues raised by the Plaintiff. The Plaintiff only asks Federal questions well within this court's jurisdiction. Supreme Court and 4th Circuit case law supports a federal policy where if no state law issues are proffered then the federal Court's abstention policies, including Younger, should not be applied. This is supported with Harper, 396 F.3d at 358 (holding district court abused its discretion in abstaining when case "involves [the] vital federal question" of whether state law is constitutional and "federal jurisdiction[would not]

impede the formation of core state policies"), Gross v.Weingarten, 217 F.3d 208, 224 (4th Cir. 2000) (holding abstention improper when case involved no "difficult questions of state law . . .whose importance transcends the result in the case at bar" and federal adjudication "would not [disrupt] state efforts to establish a coherent policy") (internal quotation marks omitted), and Neufeld v. City of Baltimore, 964 F.2d 347.

6. Federal claims, like those at issue here, which do not rest on finding a violation of state law, are federal not only in "clothing," but also in fact. Such claims are "plainly federal in origin and nature," are independent of any state law violation, and do not threaten uniform state regulation. McNeese, 373 U.S. at 674. In contrast, federal adjudication in this case would not require a federal court to "answer disputed questions of state law", nor would the relief sought establish "parallel federal and state oversight." No issue of comity or equity between the Federal and State courts exists here, Plaintiff simply asks this court to recapture it's Federal Constitutional and Statutory jurisdiction. Therefore Younger, nor any other abstention doctrine, should apply to this case.

5. 28 U.S.C. § 2283, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments". This case is a clear issue of this Court's statutory jurisdiction, meeting the statutory exception.

## X. Conclusion

1. New evidence presented here in totality of the circumstances with prior evidence displays that this Court should disregard the Younger Abstention and find it's way to the merits of the Petition. Here we've shown bad faith on the part of VA Police disregarding Federal Statute and policy to go "forum shopping", a State prosecutor attempting to hijack Federal jurisdiction by misinterpreting the Federal Assimilate Crimes Act Statute and a State Court that refuses to consider motions, especially when they are based on federal statutes and policies. Plaintiff shows the court other clearly applicable exceptions to Younger and goes further to show that abstention is not likely applicable to his Federal Petition.

2. Plaintiff asks the Court to reconsider it's application of Younger based on new evidence, to re-open the Petition and to form an opinion on the merits of the Petition.

    Plaintiff Kevin A. Soper(Pro Se) swears and affirms that the contents of this Motion are true and correct to the best of his knowledge and belief. Respectfully Submitted,

_____  7/26/24

**Kevin A Soper(Pro Se)**        **Date**
704 Cedarday Dr
Belair, Md 21015

## In Re; State of Md v Soper
## Federal District Court for Md. Case <u>23-cv-3271-JRR</u>

## Re; Emergency Petition in The U.S. Federal District Court for Md.

Re: State of Md for Cecil County v Kevin A Soper(Pro Se)
Md Circuit Court Case Number C-07-CR-23-000258/414

## Certificate of Service

**Plaintiff Kevin A. Soper hereby certifies that Defendant State of Maryland was served with this Rule 59 Motion via Certified U.S. Mail.**
**Sent to:** WENDY L. SHIFF  Assistant Attorney General Office of the Attorney General
200 Saint Paul Place, 20th Floor Baltimore, Maryland 21202

_____      7/25/24
Kevin A. Soper                                                 Date